19 F.3d 19
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERA COMPANY, LTD., Plaintiff-Appellant,
v.
DOW CORNING CORPORATION, Defendant-Appellee.
and
Roy L. Luckenbach, Defendant.
 No. 92-6324.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1994.
 
 Before: NELSON, and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Intera Company, Ltd. appeals the summary judgment in favor of Dow Chemical on Intera's claims of trade secret misappropriation and conversion of its chemical treatment process for synthetic fibers. For the following reasons, we affirm.
 
 
 2
 * The present dispute focuses on two chemical treatment processes designed to alter the chemical composition of synthetic fibers so that synthetic fabrics become more absorbent and more comfortable to wear or use, and take on the feel and other characteristics of natural fibers. Dow and Intera market competing chemical treatments for synthetic fibers designed to improve the water absorptive and soil release properties of synthetic fibers. Dow's process was originally called the LR Process[1] and is now known as the VESTAR TMFiber Systems Process; Intera's is known as the Intera Process. Intera obtained a patent for the Intera Process on June 9, 1987.
 
 
 3
 The Intera Company, a Tennessee corporation, developed the Intera Process during the early 1980's. Intera was interested in marketing the process through the use of licensing agreements which would protect Intera's trade secrets. During those years, Roy L. Luckenbach[2] was first a Vice President of Roselon Industries, Inc., and then Director of Research and Development for Cannon Mills in North Carolina. While at Roselon, Luckenbach had contact with Intera concerning the Intera Process, and was aware of a "Prospective Licensee Secrecy Agreement" between Roselon and Intera. At Cannon Mills, in his capacity as Director of Research and Development, Luckenbach signed a secrecy agreement with Intera in January of 1984.
 
 
 4
 Alamance Knits in North Carolina also had a secrecy agreement with Intera regarding the Intera process. Tommy Freeman, an Alamance employee from 1983-85, was an acquaintance of Luckenbach and discussed the Intera Process with him, explaining the chemical reactions involved in the process as well as different swelling agents, such as trichlorobenzene and Lurotex A-25, which Freeman thought would be more effective for such a chemical treatment process.
 
 
 5
 In 1985, Freeman began working for Hornwood Mills. By this time, Luckenbach was no longer with Cannon but had formed his own consulting company, Lubach International, and was working on a process for hydrophilic treatment of textiles. Hornwood entered into an agreement with Lubach International to develop the VESTAR TM process; that development, which occurred exclusively at Hornwood, began in late 1986 or early 1987. Freeman used trichlorobenzene and Lurotex A-25 in the VESTAR TM process, the same chemicals he had discussed with Luckenbach.
 
 
 6
 Luckenbach disclosed the VESTAR TM technology to Dow Corning, a Michigan corporation, pursuant to a secrecy agreement and an agreement to perform consulting services for Dow. Ultimately, Luckenbach sold the VESTAR TM Process to Dow. Dow was able to obtain only one licensee for the VESTAR TM technology, Hornwood Mills. Dow's license with Hornwood was effective July, 1988.
 
 
 7
 Intera filed this action in state court in Tennessee, claiming that Luckenbach and Dow had misappropriated the trade secrets involved in the Intera Process and converted Intera's trade secrets and the LR Process, which Intera claims to own by virtue of various secrecy agreements, and alleging as well numerous other state law causes of action stemming from Dow's use of the LR Process. The action was removed to federal court on diversity grounds by defendant Dow. The district court found that any use Dow had made of the chemical treatment technology had not resulted in damage to Intera and that Dow was not a party to and was not under any duty imposed by the secrecy agreements under which Intera claims ownership of the LR Process. The district court therefore granted summary judgment in favor of defendant Dow. The court later modified that judgment, after considering Intera's amended complaint, to include a holding that Intera had failed to state a claim for conversion of its trade secrets in the Intera Process. This appeal followed.
 
 II
 
 8
 Intera principally argues on appeal that its claims of misappropriation of trade secrets and conversion are two distinct causes of action. Intera contends that the district court erred in granting summary judgment to Dow because (1) Intera did not have an opportunity in the summary judgment proceedings to address the issue of damages and triable issues of fact relative to damages remain; (2) triable issues of fact remain as to whether Dow misappropriated Intera's trade secrets and must therefore be enjoined from using them even after they came into the public domain via the patent; and (3) conversion of an intangible, i.e., the trade secrets, is a recognized cause of action and even if it is not, the LR Process is not an intangible but is tangible property and is a proper subject of an action for conversion.
 
 
 9
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Corp. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). A district court's determination of state law is also reviewed de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). A reviewing court can affirm for reasons other than those posited by the district court. Hooks v. Hooks, 771 F.2d 935 (6th Cir.1985). This is so even if the district court has relied on an erroneous basis in granting summary judgment so long as the opposing party is not denied an opportunity to respond to the new theory. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1150 (6th Cir.1988). In this case the parties have had ample opportunity to respond to each of the issues raised.[3]
 
 A. TRADE SECRET MISAPPROPRIATION
 
 10
 Intera's first argument on appeal is that genuine issues of material fact exist regarding its claim for the state law tort of trade secret misappropriation. The elements of a trade secret misappropriation claim in Tennessee are set out in Hickory Specialities, Inc. v. B & L Laboratories, Inc., 592 S.W.2d 583, 586 (Tenn.Ct.App.1979), a case in which the trade secrets at issue were learned by the defendant during and because of his employment by the plaintiff. Hickory Specialities requires that the plaintiff must establish four elements:
 
 
 11
 1. the existence of a trade secret;
 
 
 12
 2. communicated to the defendant while the defendant is in a position of trust and confidence;
 
 
 13
 3. use of that information by the defendant; and
 
 
 14
 4. resulting detriment to plaintiff.
 
 
 15
 592 S.W.2d at 586.
 
 
 16
 The district court limited its holding to the fourth element, the damages aspect of the claim, stating:
 
 
 17
 No factual dispute remains, however, whether Intera suffered any harm as a result of any alleged use of the trade secret before the trade secret was published and dedicated to the public domain.... Because the first commercial use of the process did not occur for several months after the disclosure of the trade secret, Intera suffered no injury attributable to Dow while it had trade secret protection.
 
 
 18
 The district court assumed the presence of the other three elements of misappropriation of a trade secret.
 
 
 19
 We believe that the district court's grant of summary judgment on the misappropriation claim was correct but we reach that result by a different route. Specifically, we hold that Intera cannot establish the second element of a cause of action under Tennessee law because there is no evidence nor do the parties contend that Dow was ever in a position of trust and confidence with Intera. Although there are cases from other jurisdictions which have extended this cause of action to situations in which the defendant knowingly obtained the secrets from a third party who was in such a confidential relationship, the Tennessee courts have not done so. A federal court sitting in diversity must apply the law of the state's highest court, or, if that court has not spoken to the issue, the federal court must ascertain from all available data what the state law is. Where the state appellate court has stated a principle and relies upon it, the federal court may not disregard that pronouncement unless it is convinced by other persuasive data that the state's highest court would decide the issue differently. Mathis v. Eli Lilly and Company, 719 F.2d 134, 141 (6th Cir.1983).
 
 
 20
 The district court found that Intera had presented sufficient evidence to go forward at trial with proof that Luckenbach was under an obligation of trust and confidence to Intera, and that Dow had used the Intera Process in developing the VESTAR TM process. The district court did not address the issue of whether Tennessee law requires that Dow itself be under an obligation of trust and confidence. Intera has presented no data in this case which persuades us that the Supreme Court of Tennessee would extend the law of Tennessee beyond the principle announced in Hickory Specialities, and we decline to do so.
 
 
 21
 Summary judgment is appropriate where it is clear that the plaintiff cannot establish an essential element of its claim. And because Intera cannot prevail on a claim of misappropriation of trade secrets against Dow, it follows that Intera cannot pursue against Dow a claim of damages of any nature resulting from the claimed misappropriation. We therefore affirm the grant of summary judgment on the claim of misappropriation of trade secrets for the reasons set forth above.
 
 B. CONVERSION
 
 22
 Intera next argues that the district court erred in holding that Intera could not state a claim under Tennessee law for conversion, contending that its claim is not for conversion of an intangible, as the district court held, but for conversion of property in the form of the LR Process itself. Intera maintains that the LR Process is an improvement on or a development from the Intera Process, that it owns the LR Process, and thus the VESTAR TM Process, by virtue of its prospective licensee/secrecy agreement with Cannon Mills and that Dow converted the LR Process for its own use.
 
 
 23
 Conversion is also a state law tort. The district court found that Tennessee did not recognize the tort of conversion of trade secrets, that other jurisdictions with definitions of conversion similar to Tennessee's do not recognize the tort of conversion of trade secrets because they are intangibles, and that in any event, the tort as claimed by Intera did not fit the elements of conversion under Tennessee law. Intera cites no Tennessee law which would support our holding that the actions of Dow as alleged by Intera constitute conversion and we have no basis for assuming that the Supreme Court of Tennessee would expand the state's law of conversion to encompass Intera's claims. For the same reasons that we do not extend Tennessee's law of misappropriation of trade secrets, we decline to extend Tennessee's law of conversion. The district court's judgment that Intera cannot state a claim for conversion is affirmed.
 
 C. REMAINING CLAIMS
 
 24
 Finally, Intera argues that the district court ignored Intera's claims of misappropriation of intellectual property rights in the ideas of the LR Process, unfair competition, procuring information by improper means, unjust enrichment and constructive trust. Each of these claims is based on Intera's claimed ownership of the LR Process and Dow's alleged wrongful acquisition of that process. Intera argues that the district court should have reviewed these claims under the standard of Rule 12(b)(6), Fed.R.Civ.P.
 
 
 25
 The district court issued its opinions after extensive discovery and armed with ten briefs and mountains of materials. At least the foothills of those materials are before this court on appeal. We note that each of these remaining claims is essentially a variation on the themes of misappropriation and conversion of Intera's trade secrets and the LR Process, and that each of them depends on the same facts.
 
 
 26
 Although the district court did not do so, we hold, on the basis of the record in this case, that there is no genuine issue as to the crucial facts relative to the timing of Dow's initial involvement with Luckenbach and the LR Process. There is certainly a facial dispute as to these facts; however, that dispute simply cannot withstand the clear documentary evidence which demonstrates that Dow did not make use of the trade secrets or the LR Process prior to the issuance of Intera's patent. Therefore, Intera cannot demonstrate damage as a result of Dow's actions under any of these remaining theories because the process and the trade secrets behind it were in the public domain when Dow made use of them.[4] Although these claims are not explicitly dealt with by the district court, we think they are encompassed in the ruling that Intera cannot demonstrate any damage as a result of Dow's activity.
 
 III
 
 27
 For the foregoing reasons, the orders of the district court is AFFIRMED.
 
 
 
 [1]
 This apparently stood for "L uckenbach, R oy."
 
 
 [2]
 Mr. Luckenbach was named as a defendant in this action but is no longer a party, having been dismissed pursuant to a consent decree enjoining him from engaging in certain activities
 
 
 [3]
 Although Intera argues that it did not have the opportunity in the district court proceedings to address specifically the element of damages, the record clearly demonstrates that no less than ten briefs were filed in the summary judgment proceedings. Damages were an essential element of Intera's case, on which it had the burden of proof and the obligation to present evidence
 
 
 [4]
 Because we hold that Intera cannot establish damages under any of these theories, it is unnecessary to address the claims regarding the degree of similarity of the Intera and Dow processes and whether the Intera technology is embodied or used in the Dow process